8 F.3d 1074
 38 ERC 1381, 24 Envtl. L. Rep. 20,486
 UNITED STATES of America, Plaintiff,
Michigan Department of Natural Resources, Cross-Claimant-Appellee,
v.
Maurice M. TAYLOR, Sr., et al., Defendants,
Arthur R. Reibel and Ellsworth TDS, Inc.,
Defendants/Cross-Defendants, Appellants.
 No. 92-2284.
 United States Court of Appeals,
Sixth Circuit.
 Submitted Sept. 28, 1993.
Decided Oct. 28, 1993.
 
 Jeremy M. Firestone, Office of Atty. Gen., Environmental Protection Div., Kathleen L. Cavanaugh (briefed), Office of Atty. Gen., State Affairs Div., Lansing, MI, for Michigan Dept. of Natural Resources.
 Arthur R. Reibel, pro se.
 Cheri T. Holley (briefed), Grosse Pointe Park, MI, for Ellsworth TDS, Inc.
 Before: KEITH, NELSON, and RYAN, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is an environmental protection case in which a corporate landowner and its president appeal from a district court order that subjected them to monetary penalties and granted the State of Michigan access to the landowner's property for investigatory purposes.
 
 
 2
 A substantial quantity of hazardous waste was removed from the property several years before the commencement of the proceeding in question here. The landowner rejected a subsequent request by the state for "voluntary access" to the property, and the state then sought a court order (1) allowing the state, through its Department of Natural Resources, to conduct an on-site "remedial investigation" for a period of up to six months; (2) enjoining the landowner and its president from interfering with the state's access to the site during that period; and (3) imposing a penalty of $25,000 per day from the time the request for voluntary access was denied to the time access was granted.
 
 
 3
 The state's motion was granted in full, except that the court imposed a penalty of $500 per day, not $25,000. The court issued an opinion that gave a cogent explanation of its reasons for granting the order in aid of access. United States v. Taylor, 802 F.Supp. 116 (W.D.Mich.1992). The opinion indicated that the decision to impose penalties was based on a finding that the defendants had failed to sustain a burden of proof which the court assigned to them. Id. at 120. The opinion contained no analysis of the factors that led the court to fix the amount of the penalty at $500 per day.
 
 
 4
 The order in aid of access expired before the appeal had been fully briefed, and we conclude that the propriety of the order in aid is now a moot question. The propriety of the penalty remains to be decided, but this aspect of the case is virtually unreviewable as matters now stand. We shall therefore vacate the district court's order and remand the case for further proceedings with respect to the penalty.
 
 
 5
 * In October of 1990 the United States Environmental Protection Agency commenced an action against present and former owners of a 27-acre industrial site located on the northwest shore of Ellsworth Lake in Antrim County, Michigan. The action was brought to recover "response costs" incurred at this site by the federal government between March 12, 1986, and October 10, 1987. The government's complaint avers that the costs were incurred to stabilize conditions at the site, conduct a study of the extent of contamination, and remove, among other things, approximately 3,900 gallons of hazardous liquids and 130 yards of hazardous solids.
 
 
 6
 All industrial operations at the site had ended by the mid-1980s, according to the complaint, and it does not appear that any such operations have been resumed. In May of 1987, as we infer from exhibits in the case, title to at least part of the site was acquired by defendant Ellsworth TDS, Inc., a Michigan corporation known at the time as Ellsworth Senior Citizens Housing Commission, Inc. Defendant Arthur C. Reibel is the corporation's sole shareholder. The record indicates that a portion of the site reverted to the State of Michigan in 1990 because of non-payment of taxes.
 
 
 7
 Under date of March 17, 1992--more than four and a half years after completion of the removal action conducted by the U.S. EPA--a letter was sent to Mr. Reibel, in his capacity as President of Ellsworth TDS, Inc., by a district supervisor in the Environmental Response Division of the Michigan Department of Natural Resources. The letter explained that the Department was seeking access to the Ellsworth site "to conduct a remedial investigation to determine the extent of soil and groundwater contamination and impacts to the sediments of [Ellsworth] Lake." Pursuant to § 10d(3) of the Michigan Environmental Response Act, Mich.Comp.Laws § 299.610d(3), Mr. Reibel was requested to grant the Department voluntary access to the site within 10 working days. The letter warned that failure to respond might result in the imposition of fines and penalties of up to $25,000 for each day of non-compliance. Mr. Reibel gave his response on March 31, 1992, at which time he declined to give the Department voluntary access.
 
 
 8
 The predecessors in title of Ellsworth TDS had previously joined the Michigan Department of Natural Resources as a third-party defendant in the federal lawsuit in which the present appeal has been taken. On May 7, 1992, the Department filed a motion requesting an order of the sort described at the outset of this opinion. Briefs were filed in opposition to the motion. On July 24, 1992, having concluded that a hearing was unnecessary, the district court granted the Department's motion to the extent indicated above.[1]
 
 
 9
 In February of 1993 the district court directed the entry of a final appealable judgment pursuant to Rule 54(b), Fed.R.Civ.P. Judgment was entered against defendants Reibel and Ellsworth for $57,500,[2] which judgment was stayed pending appeal. The state contends that the appeal is moot insofar as the order in aid of access is concerned, but acknowledges that we have jurisdiction to review the monetary award.
 
 II
 
 10
 The state, as we have seen, does not interpret the order in aid of access as granting it a permanent right of entry. Having sought access of a period of only six months, the state submits that this is all it received.
 
 
 11
 The state is obviously correct in this, and the defendants do not say otherwise. The defendants tell us, moreover, that the remedial investigation was completed in November of 1992. It seems clear, therefore, that the controversy over the issuance of the order in aid of access is moot. See United States v. Cleveland Electric Illuminating Co., 689 F.2d 66 (6th Cir.1982), where a controversy arising in a factual situation analytically indistinguishable from that presented here was held to be moot.
 
 
 12
 Notwithstanding that the exercise of judicial power under Article III of the Constitution depends upon the existence of an actual case or controversy, see International Union v. Dana Corp., 697 F.2d 718, 720 (6th Cir.1983) (en banc), the defendants contend that we retain jurisdiction to review the order in aid of access because the order is "capable of repetition, yet evading review." See Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), where a similar contention was made in reliance on Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974).
 
 
 13
 The defendants' contention is not persuasive. Although issues similar to those presented in the defendants' appeal may recur, the issues did not "evade review" in the first instance. See Cleveland Electric Illuminating Co., 689 F.2d at 68. The defendants could have petitioned this court for a stay of the order in aid of access, and they "could have refused to comply with the order, thereby risking civil contempt but preserving the issues for appellate review." Id.
 
 
 14
 Where an order appealed from is unreviewable because of mootness, the appropriate thing for us to do, curiously enough, is to vacate the order. Id. Cf. United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). We shall do so here.
 
 III
 
 15
 Michigan's Environmental Response Act provides that if there is a reasonable basis to believe that there may be a release or threat of release of a hazardous substance into the environment, the Director of the Department of Natural Resources, among others, "shall have the right to enter at all reasonable times any public or private property" for investigatory and other purposes. Mich.Comp.Laws § 299.610d(3). If refused entry, the state may petition a court for a warrant authorizing access. Mich.Comp.Laws § 299.610d(7). The court is to order compliance with the state's request for entry, and is to enjoin interference therewith, "unless the defendant establishes that, under the circumstances of the case, the request is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." Mich.Comp.Laws § 299.610d(8). "[I]f there is a reasonable basis to believe there may be a release or a threatened release, the court may assess a civil fine not to exceed $25,000.00 for each day of non-compliance against a person who unreasonably fails to comply with the provisions of subsection ... (3)." Mich.Comp.Laws § 299.610d(9).
 
 
 16
 Exceedingly harsh penalties may thus be imposed against a landowner who denies the state access to his property on the strength of what ultimately proves to be a mistaken view as to the reasonableness of a suggestion that a release of hazardous substances is "threatened." In the case at bar, for example, where the court's order in aid of access was entered less than four months after the landowner's denial of access, the maximum penalty approached $3 million. If the court's order had come 60 days later, the maximum penalty would have been $1.5 million higher. For a landowner with no income--and both Mr. Reibel and Ellsworth TDS claim to be in that situation--a threat of penalties of this magnitude could obviously have a chilling effect on the landowner's exercise of his property rights.
 
 
 17
 No state may deprive any person of property without due process of law, our Constitution provides, and the right of a landowner to refuse entry to his property is clearly one of the civil rights protected by the Constitution. Property rights such as this are not absolute, of course, and the defendants do not contend--nor do we mean to imply--that a constitutional violation has occurred here. It does seem to us, however, that constitutional considerations and concern for the proper administration of justice point to a need for appropriate standards in assessing the reasonableness of a landowner's position under Mich.Comp.Laws § 299.610d(9), as well as in determining the need for assessment of a civil fine under that section and in fixing the amount of any fine that may be imposed.
 
 
 18
 It is important, in this connection, that there be a proper allocation of the burden of proof. Insofar as the issuance of an order in aid of access is concerned, Mich.Comp.Laws § 299.610d(8) places the burden of proof on the landowner. The statute creates a rebuttable presumption that the state has acted reasonably in requesting access, and it is up to the landowner to try to establish that the request is arbitrary and capricious or that it represents an abuse of discretion. Insofar as the imposition of a civil fine is concerned, however, the statute does not purport to place the burden of proof on the landowner. The fact that the state may be entitled to an order in aid of access gives rise to no presumption, under the statute, that a fine should be imposed. If the state wants to collect a fine, the state must shoulder the burden of persuading the court that the landowner acted unreasonably in denying the state's request for access.
 
 
 19
 In the case at bar the court assessed a fine on the basis of a finding "that defendants have demonstrated no reasonable grounds for denying access...." 802 F.Supp. at 120 (emphasis supplied). This was clearly an erroneous allocation of the burden of proof. Both state and federal environmental protection officials had already had access to the site for substantial periods of time, and had already conducted on-site environmental studies; it was the state's obligation to demonstrate--without the aid of any statutory presumption, this time--that the defendants had no reasonable grounds for refusing a right of reentry for further studies.
 
 
 20
 The district court appears to have been influenced, in its decision to assess a fine, by the fact that the Department had alleged, "without dispute, that this is at least the third time that defendants have denied access...." 802 F.Supp. at 119. In our review of the materials placed before us, however, we have been able to find reference to only one prior occasion when defendant Ellsworth TDS and its president denied the Michigan Department of Natural Resources access to the site. The reasonableness of that prior denial of access--and any others that may have occurred--should be evaluated, we believe, in determining whether the imposition of a fine is warranted now. The state's own good faith will be relevant in this connection, given that serious allegations have been made by the defendants to the effect that admittedly erroneous laboratory test results were used by the state after it learned that the test results were simply wrong. See 802 F.Supp. at 117-18.
 
 
 21
 If the state succeeds in demonstrating that the defendants ought to be fined, finally, it will be incumbent on the district court to articulate a factual basis for whatever dollar amount is set. Otherwise, as we have said in a different context, this court cannot conduct a meaningful review of the manner in which the district court has exercised its discretion. See Glass v. Secretary of Health and Human Services, 822 F.2d 19, 21 (6th Cir.1987).
 
 
 22
 In cases arising under the federal analogue of the Michigan statute, courts have identified the following factors, among others, as bearing on the amount of a penalty:
 
 
 23
 "(1) the good or bad faith of the defendant, (2) the injury to the public, (3) the defendant's ability to pay, (4) the desire to eliminate the benefits derived by a violation, and (5) the necessity of vindicating the authority of the enforcing party." United States v. M. Genzale Plating, Inc., 807 F.Supp. 937, 939 (E.D.N.Y.1992) (citing numerous cases).
 
 
 24
 Other factors that would appear to be relevant are the extent and gravity of the landowner's unreasonable conduct, any prior history of such conduct, the degree of culpability involved, the urgency of the state's need for access to the site, and the cost to the state of prosecuting the application for an order in aid of access.
 
 
 25
 The importance of any individual factor is likely to vary from case to case, and the facts and circumstances of the case at bar may lead the district court to consider factors we have not mentioned. Whatever the district court's ultimate decision may be, however, we are confident that the court will provide the sort of reasoned analysis that is essential if this court is to conduct a meaningful review of the decision.
 
 
 26
 The order entered on July 24, 1992, is VACATED in its entirety. The portion of the order dated February 10, 1993, imposing judgment in the amount of $57,500 is likewise VACATED. The case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The motion itself did not tell the court how much time the state would need to conduct its proposed remedial investigation. An affidavit accompanying the motion said that access to the site would be necessary for a period of six months, however, and the state interprets the order in aid of access as running only for that length of time
 
 
 [2]
 A total of 115 days elapsed between the defendants' March 31 denial of the request for voluntary access and entry on July 24 of the order in aid of access. $500 X 115 = $57,500