**UNITED STATES of America,**
**Plaintiff,**

v.

**PONDEROSA FIBRES OF AMERICA,**
**INC., Defendant.**

**No. 1:97CV909(FJS/RWS).**

United States District Court,
N.D. New York.

Sept. 27, 2001.

Office of the United States Attorney, James T. Foley U.S. Courthouse, Albany,

NY, Attorneys for Plaintiff, James C. Woods, Asst. U.S. Atty.

United States Department of Justice, Washington, DC, Attorneys for Plaintiff, Steven A. Keller, Esq., David L. Weigert, Esq.

United States Environmental Protection Agency, New York, Attorneys for Plaintiff, Brian Carr, Esq.

Rosenman & Colin, LLP, New York, Attorneys for Defendant, Richard G. Leland, Esq.,[1] of Counsel.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

The United States commenced this action against Defendant on June 27, 1997, alleging that Defendant violated § 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9604(e). Specifically, the Government seeks to impose liability on the ground that Defendant (1) unreasonably failed to provide a timely response to an Information Request within the statutorily proscribed thirty-day window, (2) provided inaccurate and incomplete information, (3) unreasonably failed to comply with statutorily mandated document production requests, and (4) unreasonably failed to provide the statutorily mandated supplementation to the Information Request.

Before the Court is the Government's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure on the issue of liability and for an order compelling Defendant to fully comply with its Information Requests.

## II. BACKGROUND

The present action finds its genesis in the United States Environmental Protection Agency's ("EPA") investigation of the alleged release and threatened release of hazardous substances at the St. Lawrence Pulp and Paper Superfund Site ("Site"), located in Ogdensburg, New York.

Ponderosa St. Lawrence Corporation ("PSL")[2] purchased the Site from the Bank of New York on June 18, 1984. From July 1984 until May or June 1985, PSL operated a facility for the conversion of waste paper and pulp into de-inked pulp at the Site.

On May 20, 1995, the New York State Department of Environment Conservation ("NYSDEC") conducted an annual inspection of the Site's wastewater treatment facility. On June 10, 1985, NYSDEC wrote to PSL's mill manager to report that during the annual inspection NYSDEC discovered the following: areas around the primary settling tank covered with spilt sludge; sludge-encrusted media being washed down in an area between the mill and the St. Lawrence River; and spillage

---

1. By Order dated August 24, 2001, the Court granted Roseman & Colin, LLP's motion to withdraw as counsel.

2. PSL was incorporated on February 27, 1984 and was a subsidiary of Ponderosa Fibres of America, Inc. ("PFA"). PFA was, in turn, a subsidiary of Ponderosa Fibres Operating Corporation ("PFOC"). PSL owned no assets other than the Site. PSL purchased the Site with the assistance of a loan received through the City of Ogdensburg. At the Site, PSL converted waste paper to de-inked pulp. The Site had previously been used for the manufacturing of pulp and paper products by several different companies. After operations at the Site ceased in 1985, PSL was a dormant corporation. It was formally dissolved on March 25, 1992. On July 26, 1987, PFOC and PFA merged, with PFA continuing as the surviving corporation.

along the edge of the treatment facility's intake trough. NYSDEC conducted further inspections of the Site were conducted in 1995.

Based upon the determination that the Site posed a significant and imminent threat to the public health and welfare and the environment, on October 26, 1995, NYSDEC requested that the EPA undertake an Emergency Removal Action at the Site to abate and remove the identified threat to public safety. The EPA recommended and approved the performance of a Removal Action at the Site.

On May 14, 1996, the EPA, acting pursuant to its authority under § 104(e) of CERCLA, sent PFA a Notice of Potential Liability and Request for Information ("Information Request"). The Information Request was sent to the attention of Martin Bernstein, President and Chief Executive Officer of Ponderosa Fibres of America, Inc. ("PFA"). Consistent with § 104(e)(2), the Information Request required Defendant to provide information and documents relating to the following matters: the identification, nature, and quantity of materials at the Site; how certain substances may have been generated, treated, stored, or disposed of at the Site; the nature and extent of any releases of hazardous substances, pollutants, or contaminants at the Site; and Defendant's ability to perform and/or finance cleanup actions at the Site. Per the statutory requirement, PFA was to provide a "complete and truthful response" to the Information Request within thirty days of receipt. There is no dispute that the Information Request clearly stated that compliance was required by law and that

failure to comply might result in the assessment of civil penalties under § 104(e) of CERCLA. PFA received the Information Request on May 14, 1996, by telecopier.

It is undisputed that PFA failed to provide any response within the thirty-day statutory window. By letter dated June 27, 1996, the EPA informed PFA that its response was overdue, requested immediate submissions and indicated that PFA was potentially liable for civil penalties. The EPA sent another letter, dated August 8, 1996, to PFA regarding the overdue information. On September 11, 1996, the EPA issued a demand for penalties under § 104 of CERCLA.

PFA submitted its initial response to the Information Request on September 18, 1996, ninety-seven days past the thirty-day statutory deadline. In its September 18, 1996 response, PFA failed to produce a single document. It was not until after the United States filed its complaint and issued formal discovery requests in the present action that PFA made its first substantial document production, on November 25, 1998, 895 days after the response deadline. Equally troublesome, as of the date of this Order, PFA's submissions remain incomplete and inaccurate as PFA has failed to supplement its initial responses.

## III. DISCUSSION [3]

### A. Summary Judgment

Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not]

---

**3.** On July 30, 2001, the Government submitted additional information obtained through third-party discovery in the parallel action, *United States v. Ponderosa Fibres of America, Inc.,* 1:99–CV–1305 (FJS/RWS). By letter dated August 10, 2001, Defendant's bankruptcy counsel contested the Government's post-summary judgment submissions. The Court did not consider the Government's July 30, 2001 submissions in its determination of the matter. *See* Dkt. Nos. 56 and 58.

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden "of informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the burden then shifts to the non-movant to " 'set forth specific facts showing that there is a genuine issue for trial.' " *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505 (quotation and footnote omitted); *see* Fed. R.Civ.P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, . . ."). To meet this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). "Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment." *Fincher v. County of Westchester*, 979 F.Supp. 989, 995 (S.D.N.Y.1997) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990)). The Court, however, must not weigh the evidence but instead is "required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments[.]" *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir.1996) (citations omitted). The ultimate inquiry is whether a reasonable jury could find for the non-moving party based on the evidence presented, the legitimate inferences drawn from that evidence in favor of the non-moving party, and the applicable burden of proof. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## B. Liability Under § 104(e) of CERCLA

Congress enacted CERCLA in 1980 in response to the serious environmental and public health problems posed by the release of hazardous substances. CERCLA established a fund, the "Hazardous Substances Superfund," to finance response actions at sites deemed to pose a significant and imminent threat to the public health and welfare and the environment. The EPA's use of information request letters is the cornerstone of the Superfund enforcement program. Pursuant to § 104(e) of CERCLA, the EPA may, upon reasonable notice, "require any person who has or may have information relevant to any of" three broad subject matters, to furnish "information or documents relating to such matter[.]" 42 U.S.C. § 9604(e)(2). These three subject matters include:

(A) The identification, nature, and quantity of materials which have been or are generated, treated, stored, or disposed of at a vessel or facility or transported to a vessel or facility; (B) The nature or extent of a release or threatened release of a hazardous substance or pollutant or contaminant at or from a vessel or facility; and (C) Information relating to the ability of a person to pay for or to perform a cleanup.

42 U.S.C. § 9604(e)(2).

When a party fails to comply with such a request, and "there is a reasonable basis to believe there may be a release or threat of a release of a hazardous substance or pollutant or contaminant, the court shall . . . (ii) . . . enjoin interference with such information or document requests or orders or direct compliance with the requests or orders . . . ." 42 U.S.C. § 9604(e)(5)(B). Additionally, the Court

may assess civil penalties of up to $25,000 per day of noncompliance ($27,500 per day on and after January 30, 1997) against any party who *unreasonably* fails to comply with an EPA Information Request. *See id.*

Liability under § 104(e) of CERCLA may accrue if the following elements are established by a preponderance of the evidence: (1) the information request was issued by a duly designated officer, employee or representative of the President, *see* 42 U.S.C. § 9604(e)(1); (2) the information request was directed to a "person" within the meaning of CERCLA, *see* 42 U.S.C. §§ 9601(21), 9604(e)(2); (3) the information request was issued for the purpose of determining the need for a response action under CERCLA, choosing or taking any such response action, or otherwise enforcing the provisions of CERCLA, *see* 42 U.S.C. § 9604(e)(1);[4] and (4) the information request related to one or more of the topics set forth in § 104(e)(2)(A)-(C) of CERCLA, *see* 42 U.S.C. § 9604(e)(2)(A)-(C). As noted above, whether the assessment of civil penalties for non-compliance is appropriate turns on the question of the reasonableness of the failure to comply with an Information Request. *See* 42 U.S.C. § 9604(e)(5)(B).

In the instant case, PFA does not dispute that the Government has established the required elements outlined above. Rather, PFA contends that summary judgment should not be granted because there are material issues of fact in dispute with regard to the reasonableness of PFA's failure to comply with the Information Request. While acknowledging the fact-intensive nature of the inquiry, the Court finds the nature and duration of PFA's non-compliance and the justifications proffered to explain such non-compliance unreasonable as a matter of law.

## C. "Reasonableness" Inquiry

■ The Government argues that PFA's non-compliance is properly considered "unreasonable" on the basis that (1) PFA failed to respond within the statutory window, (2) PFA's responses, when received, were incomplete and inaccurate in material respects, and PFA failed to timely reply with the request for document production, and (3) PFA has failed to properly supplement the information provided as required under the statutory scheme. Taken as a whole, the Court concludes that PFA's non-compliance was unreasonable.

### 1. Failure to Respond within the Statutorily Proscribed Thirty Day Period

As noted above, it is uncontested that PFA failed to respond to the Information Request within the thirty-day period. It was not until September 18, 1996, ninety-seven days after the response deadline that PFA submitted a series of responses to the Information Request, responses the Government contends were incomplete and untruthful in several aspects. It is also uncontested that the required documentary submissions were not made until November 25, 1998, 895 days past the response deadline.

Again, PFA does not deny the fact that it failed to comply in a timely manner; rather, PFA offers only general excuses

---

4. The EPA ultimately initiated, conducted, and completed a Removal Action at the Site. On August 18, 1999, the Government initiated a cost recovery action against Defendant. In that action, the Government seeks to recover over $825,000 in response costs incurred in connection with the removal of hazardous waste pursuant to § 107(a) of CERCLA, *see* 42 U.S.C. § 9607(a). *See United States v. Ponderosa Fibres of America, Inc.,* 1:99–CV–1305 (FJS/RWS).

without specific facts to show exactly how and why it was impeded from complying with the Information Request. In sum, PFA cites internal impediments, including a financial crisis, staff attrition and turnover, and the fact that PFA's former subsidiary, PSL, had been dormant for over ten years as justification for the delay. PFA also hints feebly that the compilation of the requested information was further impeded by the fact that PFA has office locations in Atlanta, Baltimore, and New York.

The Court finds PFA's proffered justifications unavailing, lest the incidents of everyday business create such exceptions so as to swallow the rule and vitiate compliance with § 104(e) of CERCLA completely.

PFA also contends that its ninety-seven-day delinquency "pales" in comparison to behavior characterized as unreasonable in other § 104(e) cases. Both parties cite *United States v. Martin*, No. 99 C 1130, 2000 WL 1029188 (N.D.Ill. July 26, 2000). In *Martin*, the court granted the Government's motion for summary judgment and held that the defendant's failure to take *any* action for 607 days after the information request deadline was *per se* unreasonable. *See id.* at *8. The parties also cite *United States v. Barkman* in support of their respective positions. 784 F.Supp. 1181 (E.D.Pa.1992). In *Barkman*, the court found that the defendant's 700–plus–day delay in fully complying with an EPA information request was *per se* unreasonable. *See id.* at 1189 (overall delay as to both the duration and scope was *per se* unreasonable).

This line of argument, however, erects a false dichotomy between compliance which is either reasonable or unreasonable *per*

*se*. Pursuant to the express language of the statute, the Court need not find that PFA's non-compliance was unreasonable *per se* as a prerequisite to imposing liability; rather, the Court need only identify that Defendant "*unreasonably* fail[ed] to comply with" an EPA Information Request. 42 U.S.C. § 9604(e)(5)(B) (emphasis added). Therefore, even assuming that PFA's non-compliance was not as egregious or flagrant as the non-compliance of the defendants in *Martin* and *Barkman*, the Court, in consideration of the duration and scope of PFA's non-compliance, may properly conclude that PFA's conduct was unreasonable as a matter of law.

### 2. Incomplete and Inaccurate Information Provided

The Government contends that, assuming *arguendo*, PFA's failure to respond to the EPA's Information Request until ninety-seven days after the deadline was reasonable, PFA's failure to respond completely and accurately for several years after the deadline was patently unreasonable.[5]

While PFA asserts that it had a "good faith belief" that its responses were complete and accurate, such arguments are misplaced and irrelevant to the question of liability as § 104(e) makes clear, a defendant's state of mind is irrelevant to the unreasonableness determination. *See United States v. Crown Roll Leaf, Inc.*, 19 Envtl. L. Rep. 20262, 20264 (D.N.J.1988) (court found that the defendant's alleged lack of wilful violation of § 104(e) was irrelevant because "[t]he language of section 104(e) of CERCLA does not require *mens rea* to establish a violation." (citation omitted)). Thus, "the Government need not

---

5. Given the disposition of the matter in favor of the Government, it is unnecessary for the Court to address the Government's allegations that PFA intentionally misrepresented or withheld specific information.

demonstrate that the defendant intended to act unreasonably, only that he in fact did act unreasonably." *Martin,* 2000 WL 1029188, at *7 (citation omitted).[6]

It is undisputed that pursuant to § 104(e)(2), the EPA requested documents related to the presence and release of hazardous substances, pollutants and contaminants at the Site. Nor is there any dispute that PFA failed to include any documents in its initial September 18, 1996 response, and in fact that PFA made its first "substantive" document production on November 25, 1998—895 days after the response deadline.

PFA rationalizes its failure to produce the required documentation by claiming that it was attempting to locate responsive documents or, in the alternative, that it was not aware that the documents eventually supplied to the Government during discovery existed at the time that it prepared the response. Relying on *United States v. General Laminates, Inc.,* PFA contends that the EPA had a duty to inquire as to why PFA was unable to produce any documents. *See* No. 89–497–CIV–J–12, 1990 WL 358299 (M.D.Fla. June 27, 1990) (EPA has an obligation to provide the defendant with the opportunity to substantiate his assertion that the documents no longer existed before pressing for a penalty). PFA's appeal to *General Laminates* is neither controlling nor persuasive to the case at bar. In *General Laminates,* the district court's admonition that the EPA should have weighed the credibility of the defendant's justification

for failing to produce identified documents (tax returns allegedly destroyed by fire) is factually inapposite to the instant case because PFA simply failed to produce the required documentation without any explanation or rationale. Thus, even if PFA's application of the holding in *General Laminates* were persuasive, that alone would not militate against a finding that Defendant's non-compliance was unreasonable based on the nature and duration of its delay.

### 3. Supplementation of Response

The Government also contends that PFA unreasonably failed to supplement its initial response to the Information Request. In support of this assertion, the Government points primarily to PFA's response to Information Request No. 28, which sought information and documents related to other companies which conducted operations, or were responsible for handling, use, storage, treatment, and disposal of hazardous waste at the Site. In its response, PFA named only three entities. The Government notes, however, that on August 30, 2000, PFA submitted a motion for leave to file a proposed third-party complaint naming seven as defendants in its contribution action. That action is separate from the present action and involves the Government's attempt to recover the costs associated with clean-up from PFA. PFA's response is limited to the contention that at the time PFA filed its response to the Information Request, PFA was only aware of the three prior owner entities.

---

**6.** Considerations of the Defendant's intentions are appropriately reserved for the determination of the amount of penalty imposed. Courts look to five equitable factors in calculating the appropriate amount of the penalty imposed under 42 U.S.C. § 9604(e)(5)(B)(ii): "(1) the good or bad faith of the defendant; (2) the injury to the public; (3) the defendant's ability to pay; (4) the desire to elimi-

nate the benefit derived by the violation; and (5) the necessity of vindicating the authority of the enforcing agency." *Martin,* 2000 WL 1029188, at *8 (citing *United States v. Crown Roll Leaf, Inc.,* 20 Envtl. L. Rep. 20297, 20300 (D.N.J.1989) ("Crown II") (citing *United States v. Reader's Digest Ass'n, Inc.*, 662 F.2d 955, 967–68 (3d Cir.1981))).

According to PFA, it only learned about additional operators at the Site in the Summer of 2000, after reviewing "publicly available documents." PFA does not contest the fact that it failed to provide supplemental information to remedy responses later discovered to be inaccurate.

Accordingly, based on the foregoing analysis, the Court finds Defendant PFA's non-compliance unreasonable as a matter of law.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**ORDERED** that Plaintiff's motion for summary judgment is **GRANTED** with respect to the issue of liability pursuant to § 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9604(e); and it is further

**ORDERED** that Defendant render full compliance with any Information Requests in connection with this matter, including but not limited to all appropriate document production and supplementation of responses; and it is further

**ORDERED** that the Court will conduct a telephone status conference on October 11, 2001, at 9:00 a.m., with respect to the assessment of damages pursuant to 42 U.S.C. § 9604(e)(5)(B), and Plaintiff's counsel is to initiate said conference call.

**IT IS SO ORDERED.**