**UNITED STATES of America, Plaintiff**

v.

**William M. GURLEY, Defendant**

**No. 93–2755 D.**

United States District Court,
W.D. Tennessee,
Western Division.

Nov. 27, 2002.

Richard Gladstein, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, DC, for U.S.

James W. Gentry, Jr., Spears Moore Rebman & Williams, Chattanooga, TN, for William M. Gurley.

W.C. Blanton, Oppenheimer Wolff & Donnelly, Minneaoplis, MN, pro se.

Gary P. Gengel, Oppenheimer Wolff & Donnelly, Minneaoplis, MN, pro se.

Thaddeus R. Lightfoot, Oppenheimer Wolff & Donnelly, Minneaoplis, MN, pro se.

David Wade, Martin Tate Morrow & Marston, Memphis, TN, pro se.

Charlotte Knight Griffin, Memphis Light Gas & Water, Memphis, TN, pro se.

Michele L. Walter, U.S. Dept. of Justice, Environmental & Natural Resources Div., Washington, DC, pro se.

Arnold Rosenthal, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, DC, pro se.

Sidney P. Alexander, U.S. Attorney's Office, Memphis, TN, pro se.

## ORDER GRANTING PLAINTIFF'S MOTION FOR THE IMPOSITION OF A CIVIL PENALTY

DONALD, District Judge.

Before the court is Plaintiff's motion for the imposition of a civil penalty pursuant to 42 U.S.C. § 9604(e)(5)(B) for failure to comply with Environmental Protection Agency information requests. For the following reasons, Plaintiff's motion is granted, and this Court orders the Defendant to pay $1,908,000 in civil penalties.

### I. *Factual Background*

Plaintiff United States brought this petition, on behalf of the Environmental Protection Agency ("EPA"), under § 104(e)(5)(B) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9604(e)(5)(B). This petition comprises one small part of a complex litigation landscape involving the alleged dumping and subsequent clean-up of hazardous waste at a former landfill near South Eighth Street in West Memphis, Arkansas ("Site"). Since 1962, Defendant William M. Gurley ("Gurley") has been the president and majority stockholder in Gurley Refining Company ("GRC"). GRC's business involved re-refining used oil for resale. This process created a by-product of oily residue which GRC disposed of at, among other places, the Site. *See United States v. Gurley,* No. 93–2755–TUA, slip. op. at 3 (W.D.Tenn. Dec. 30, 1998).

This particular motion arises from the EPA's efforts to obtain information from Gurley regarding the Site. On February 6, 1992, the EPA, pursuant to its statutory authority under 42 U.S.C. § 9604(e)(2), issued a general notice letter and information request to several parties, including Gurley. The information sought Gurley's knowledge of the types of hazardous materials disposed of at the Site, the location within the Site where these materials were disposed, any other potential responsible parties ("PRP"s) of whom Gurley had knowledge, Site operations, the structure of GRC and Gurley Oil ("GO"), and the extent of Gurley's assets. *See* Tr. of Civil Penalty Trial at 77, *United States v. Gurley* (No. 93–2755–D); United States' Post–Trial Mem. at 7. The letter also advised Gurley that his failure to reply within fifteen days of receipt of this letter might result in an enforcement action by the EPA seeking the imposition of penalties of up to $25,000 per day of non-compliance. *See* Exhibit 18, Exhibits to Def. Trial Brief Re Issue of Civil Penalty at 3.

The EPA attempted to send this letter to Gurley on five separate occasions. Letters were sent by certified mail to Gurley's correct home address, principle place of business, and the office of Gurley's attorney. Each of these letters came back unopened and unaccepted. Letters were then sent via Federal Express to four different locations. Three of these letters were not accepted, and the fourth, which was accepted, was quickly returned to the EPA. Mr. Weeks of the EPA then attempted to deliver the letter personally, bringing the letter with him to Memphis and leaving it with Gurley's personal secretary, whom he witnessed place the letter on Gurley's desk. The letter was returned to the EPA before Weeks got back from Memphis. *See* Tr. of Civil Penalty Trial, at 82–84. Finally, the EPA enlisted the help of the U.S. Marshals' Service, who

delivered the appropriate documents to Gurley's wife on August 27, 1992, following several unsuccessful attempts.

On September 15, 1992, Gurley sent a letter to the EPA stating that he would only answer information requests addressed to GRC. The EPA responded on January 7, 1993, telling Gurley that he was required to respond to the request in his individual capacity. The EPA also asked Gurley to answer six additional questions. On January 18, 1993, Gurley again sent the EPA a letter refusing to answer the EPA's questions in his individual capacity. Then, on April 22, 1993, Gurley offered a response, on behalf of GRC, providing a terse, two-page answer to the EPA's information request.[1] Gurley's response did not identify other PRPs, describe the manner in which hazardous materials were disposed, or provide Gurley's financial information. On July 1, 1993, Mr. Weeks wrote Gurley requesting that Gurley supplement his April 22 answers with additional information. Gurley sent an additional two-page response, apparently both in an individual capacity and on behalf of GRC, on July 27, 1993. Dissatisfied with Gurley's two responses, in particular his failure to identify PRPs, explain the Site's operations, or provide information regarding Gurley's finances, on August 27, 1993, the United States filed the present action.

On February 17, 1994, Gurley provided the EPA with what it terms "an incomplete and evasive response to a number of EPA's information requests." United States' Post–Trial Mem. at 9. The United States deposed Gurley on July 29, 1994, and for the first time obtained information regarding PRPs. In April 1996, this Court stayed the instant action due to Gurley's bankruptcy petition in Florida. In January 1998, once the bankruptcy petition had

been denied, this Court reinstated the instant penalty action. Later, on November 11, 1998, Gurley submitted a signed affidavit in which he admitted to familiarity with the records indicating where the used oil had been collected. Relying principally on this affidavit, on April 28, 1999, Gurley stated in a deposition that he specifically recollected obtaining used oil from at least 417 sources. *See* United States' Post–Trial Mem. at 13–14.

On December 30, 1998, Judge Turner issued an Order granting in part and denying in part the United States' Motion for Summary Judgment as to Gurley's liability. The Order found Gurley liable for his failure to comply fully with the 1992 information request and his failure to comply fully with three of six questions posed to him in the 1993 supplemental information request. The Court then ordered Gurley to comply fully with the information requests. *See United States v. Gurley*, No. 93–2755–TUA, slip. op. at 8–9. The Order also authorized the United States to petition the Court for the imposition of a civil penalty pursuant to 42 U.S.C. § 9604(e)(5)(B). *See id.* at 9. On January 12, 2001, the Court entered a Case Management Order ("CMO") which delineated a mediation procedure for Site-related cases. On March 26, 2001, this Court struck Plaintiff's motion for the imposition of a civil penalty to allow mediation of the dispute. On October 24, 2001, this Court granted Plaintiff's motion for reconsideration and reinstated the civil penalty claim. A hearing was held on the motion for the imposition of civil penalties on November 14, 2001. Post-trial briefs were submitted on January 9, 2002.

---

**1.** The Record does not indicate whether the EPA interjected between these two responses by Gurley.

## II  *Discussion*

### A. The EPA's Requests Were Reasonable

■ In his December 30, 1998 Order holding Gurley liable for violating 42 U.S.C. § 9604(e), Judge Turner rejected Gurley's contentions that the EPA's requests for information were arbitrary and capricious or otherwise unlawful. *See United States v. Gurley*, No. 93–2775–TUA, slip. op. at 5. First, Judge Turner found it reasonable for the EPA to seek information from Gurley despite the fact that the EPA had already acquired most of the information it requested from other sources because "a defendant cannot decide for the EPA when their information is duplicative." *Id.* at 5. Moreover, Judge Turner opined:

> The contamination at the South Eight Street site appears to have been caused by waste generated by GRC. As president of that organization, Gurley is a logical person to query. Even if the EPA gathered reams of evidence from other sources, Gurley is a patently logical source to use to complete its knowledge to double-check previously gathered information. In fact, considering that the underlying cleanup relates to the actions of a company which Gurley ran, this court believes it would have been irresponsible for [sic] EPA not to seek information from him. Certainly its decision to do so was not arbitrary or capricious.

*Id.* at 5–6.  Second, Judge Turner held that the EPA was entitled to query Gurley about his financial status prior to finding Gurley liable for the hazardous waste dumping.

> Considering Gurley's status as majority stockholder and president of GRC, as well as his admitted day-to-day involvement in the operations of the company, it was rational for the EPA to seek information from Gurley. Only then

could it determine Gurley's responsibilities within the company and his ability to finance a remedial action should the evidence show that he was liable.

*Id.* at 6–7.  Judge Turner's Order has not been reversed on appeal, and the matter presently before this Court is not a motion for reconsideration but rather a motion for the imposition of a civil penalty. Therefore, Judge Turner's findings remain the law of the case.

■ Moreover, even were this Court to review *de novo* the validity of the information requests, the Court agrees with Judge Turner's conclusions that the requests were valid and enforceable. Administrative agency information requests "will be enforced where: (1) the investigation is within the agency's authority; (2) the request is not too indefinite; and (3) the information requested is relevant to legislative purposes." *United States v. Martin*, No. 99 C 1130, 2000 WL 1029188 (N.D.Ill. July 26, 2000), at *6 (citing *EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 783 (7th Cir.1983); *United States v. Pretty Products, Inc.*, 780 F.Supp. 1488, 1506 (S.D.Ohio 1991)).  Both the February 6, 1992 and the January 7, 1993 information requests satisfy each of these three elements.  The EPA was authorized by Congress, pursuant to 42 U.S.C. § 9604(e)(2), to require any person with information relevant to the EPA's environmental investigation "to furnish requested information or documents upon reasonable notice." *Martin*, 2000 WL 1029188, at *6. Thus, the EPA has the authority to proffer information requests.  Next, the scope of the request-aside from the three questions struck by Judge Turner-was narrowly tailored to conform to the specific areas of inquiry within § 9604(e)(2).  Thus, the requests were "not too indefinite."  Finally, the requests were consonant with the legislative purpose of CERCLA because the

answers provided to the requests would facilitate the EPA's investigation and subsequent cleanup of the Site. Therefore, this Court finds both information requests to be valid and enforceable.

### B. Gurley Unreasonably Failed to Comply With the EPA's Information Requests

42 U.S.C. § 9604(e)(5)(B)(ii) authorizes courts to assess civil penalties against any person who "unreasonably fails to comply" with a section 104(e) request. *See, e.g., United States v. Martin,* No. 99 C 1130, 2000 WL 1029188 (N.D.Ill. July 26, 2000), at *3. Plaintiff asserts that Gurley unreasonably failed to comply fully with the EPA's February 6, 1992, and January 7, 1993 information requests, first by not responding at all, and later by providing incomplete, evasive, and inaccurate responses. Section 9604(e)(5)(B)(ii) does not require the United States to prove "that a defendant accused of violating § 9604(e)(5)(B) *intended* to act unreasonably, only that he did. Once the USA has made out a prima *facie case* of unreasonable activity, the burden of proof shifts to the defendant to rebut the government's case by ... proffering ... affirmative defenses." *United States v. Barkman,* 784 F.Supp. 1181, 1187 n. 3 (E.D.Pa.1992) (citing *United States v. Crown Roll Leaf, Inc.,* 19 Envtl. L. Rep. 20262, 20264–65 (D.N.J. Oct.20, 1988)) (*"Crown Roll Leaf I"*) (emphasis in original). This Court holds that the United States has satisfied its burden of demonstrating prima facie unreasonableness by illustrating Gurley's evasive and willful efforts to avoid responding to the information requests from February 6, 1992 until September 15, 1992; Gurley's

refusal to respond from September 15, 1992 until April 22, 1993; Gurley's incomplete response and failure to respond to financial or PRP information from April 22, 1993 until July 28, 1994; and Gurley's incomplete disclosure of financial or PRP information from July 28, 1994 until February 2, 1999.

In mitigation, Gurley offers several justifications for why his conduct was reasonable. First, Gurley avers that his failure to respond was justified because the information requests were not properly "served" on him. *See* Gurley's Resp. to Pet. at 17–20; 22. Gurley cites to *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999), in support of his proposition. *Murphy Brothers* held that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Brothers,* 526 U.S. at 347–48, 119 S.Ct. at 1325. This Court rejects Gurley's claim, however, because Gurley was not being "served" with a summons and/or complaint. Instead, the EPA sent Gurley an information request to complete and return to the EPA. As a result, rules of civil procedure regarding service of process simply do not apply.[2] Further, *Murphy Brothers* is wholly inapposite to the instant case because it did not address CERCLA information requests; rather, it involved a statute of limitations question regarding removal to federal court and whether a courtesy copy of a complaint counted as proper service. *See id.* Addi-

---

**2.** Of course, if the delivery of the information requests was so problematic as to infringe upon Gurley's due process rights, he might be protected from liability for failure to respond. Gurley raises no such challenge, however. Moreover, as discussed below, the Court finds

that the delivery of the information requests, far from Constitutionally problematic, was reasonably calculated to ensure that Gurley would timely and effectively receive the requests.

tionally, Gurley fails to explain how the EPA's efforts to send letters to Gurley's home and business by registered mail, Federal Express, and personal delivery would fail to comport with service requirements under the Due Process Clause or the Federal Rules of Civil Procedure were the EPA serving Gurley with a traditional summons and complaint. Relatedly, Gurley does not allege that he sought legal counsel before declining to respond. Moreover, Gurley does not dispute that the summons and complaint for the instant case were properly served on him. *See* Gurley's Resp. to Pet. at 22. Finally, if Gurley is challenging the validity of CERCLA information request delivery in general, this Court rejects this attack because Gurley has not provided sufficient legal support for such a challenge. Therefore, this Court finds that Gurley's failure to respond to the information requests constitutes an unreasonable response warranting a civil penalty, despite Gurley's position that his failure to respond was justified because the requests violated service requirements.

█ Second, Gurley argues that his failure to respond and subsequent insufficient responses were justified because the EPA already had acquired, from other sources, the information it requested from Gurley. Thus, Gurley claims that the EPA's information requests were superfluous and unnecessary. *See* Gurley's Resp. to Pet. at 14–17. Indeed, Gurley goes so far as to allege that the EPA requested this information not·to uncover additional· information about Site operations, PRPs, or Gurley's assets, but to use "Gurley's understandably less than adequate recall as a means of attacking him." Id. at 17. These claims were previously rejected by Judge Turner. *See United States v. Gurley*, No. 93–2775–TUA, slip. op. at 5–6. As a result, Gurley is estopped from arguing these same claims a second time. Moreover, even if Gurley

was not estopped, the EPA has the authority to seek information from Gurley even if the EPA already possessed-from other sources-some of the information it was seeking from Gurley. *See Barkman*, 784 F.Supp. at 1189; *Crown Roll Leaf I*, 19 Envtl. L. Rep. at 20265. *See also United States v. Pretty Products, Inc.*, 780 F.Supp. 1488, 1507 (S.D.Oh.1991) (holding that parties subject to a CERCLA investigative request "may not decide for the EPA when they have provided sufficient information."). Therefore, Gurley was not justified in failing to comply fully with the information request despite the fact that the EPA already possessed some of the information it sought from Gurley.

Third, Gurley attempts to justify his initial refusal to respond by claiming that he did not have to answer in his individual capacity. As Gurley's counsel candidly stated, "Gurley ... without benefit of counsel[, wrote] to the EPA ... advising the EPA that GRC was the proper party to receive the interrogatories-not William Gurley." Def. Resp. to Pet. at 19 (emphasis omitted). As an initial matter, this Court finds Gurley's refusal to respond to the EPA information request to be unreasonable because his sole justification for not responding was a non-lawyer's guess regarding the .legally responsible party. The Court also finds this justification disingenuous because Gurley subsequently admitted to responding both as a representative of GRC and in his individual capacity in his July 27, 1993 response. *See* id. at 20.

Moreover, Gurley's refusal to respond is unreasonable as a matter of law. Gurley claims that the holding of *United States v. Bestfoods*, 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998), somehow shields him from any individual CERCLA liability, thereby making questions addressed to him in his personal capacity beyond the

scope of the EPA's authority. *See* Gurley's Resp. to Pet. at 22. Once again, Judge Turner expressly rejected this contention in his 1998 Order. Judge Turner opined that even if Gurley could not be held personally liable for the acts of GRC, the EPA was still entitled to question him in his personal capacity. "The EPA's authority under § 9604(e) is not tied to a finding of liability. Rather, the EPA may require 'any person who has or may have information' to provide that information." *United States v. Gurley,* No. 93–2775–TUA, slip. op. at 6 n. 3. Because Gurley was a "person" who had (or at least might have had) information, the EPA was permitted to send him information requests. Finally, Gurley incorrectly assumes that *Bestfoods* shields him from personal liability. Indeed, *Bestfoods* merely states that parent corporations (or in this instance majority stockholders) may not be held directly liable as *owners* for the actions of subsidiaries. *Bestfoods* expressly maintains, however, that parents or majority stockholders may be held directly liable as *operators* of facilities owned by a subsidiary corporation. *See Bestfoods,* 524 U.S. at 64, 118 S.Ct. at 1886. Thus, the EPA was justified in querying Gurley to ascertain whether Gurley took steps to "operate" the Site, and Gurley's failure to respond to this query was unreasonable.

■ The Court holds that Gurley's other justifications for his failure to respond fully are without merit. Nowhere in his Response has Gurley suggested the type of justification-such as accidental destruction of requested documents or other severe, atypical logistical problems impeding a proper response-which courts have found to be reasonable. *Cf. United States v. General Laminates, Inc.,* No. 89–497–CIV–J–12, 1990 WL 358299 (M.D.Fla. June 27, 1990) (finding reasonable defendant's contention that he did not have copies of his personal tax returns because they were accidentally destroyed in an a

fire started by the police chief). Even were the Court to accept that Gurley intended, in good faith, to provide complete and honest responses on April 22, 1993 and July 27, 1993, "a defendant's state of mind is irrelevant to the unreasonableness determination." *United States v. Ponderosa Fibres of America, Inc.,* 178 F.Supp.2d 157, 162–63 (N.D.N.Y.2001) (citations omitted). As a result, this Court concludes that Gurley unreasonably failed to comply with the section 104(e) request.

## C. Fashioning an Appropriate Civil Penalty

■ Having determined both that the information requests were valid and that Gurley unreasonably failed to comply with the requests, this Court must now determine the appropriate penalty to assess against Gurley. Trial courts have considerable discretion in fashioning appropriate civil penalties. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 230 n. 6, 95 S.Ct. 926, 930–31 n. 6, 43 L.Ed.2d 148 (1975). 42 U.S.C. § 9604(e)(5)(B) provides for the imposition of a civil penalty as high as $25,000 for each day of non-compliance with EPA information requests. While several courts have held that the point of departure for a court's determination of a penalty amount is the maximum allowable penalty, *see, e.g., Atlantic States Legal Foundation v. Tyson Foods, Inc.,* 897 F.2d 1128, 1137 (11th Cir. 1990); *United States v. LeCarreaux,* Civ. No. 90–1672(HLS), 1992 WL 108816 at *13 (D.N.J. Feb. 19, 1992), only one reported case to date has set a penalty for this maximum amount. *See United States v. Tannery,* No. 4: 91CV693, 1992 WL 1458802 (N.D.Tex., Dec.7, 1992). Nevertheless, the penalty fashioned must be significant enough to "serve both a specific and general deterrent purpose, deterring future violations by these defendants and similar violations by others." *LeCarreaux,* 1992 WL 108816 at *15 (citations omitted).

*See also United States v. Ekco House-wares, Inc.*, 853 F.Supp. 975, 989 (N.D.Ohio 1994), *aff'd in part & rev'd in part*, 62 F.3d 806 (6th Cir.1995) (citations omitted) ("In exercising its discretion, the Court should give effect to a major purpose of a civil penalty: deterrence."); *United States v. M. Genzale Plating, Inc.*, 807 F.Supp. 937, 939 (E.D.N.Y.1992); *United States v. Phelps Dodge Industries, Inc.*, 589 F.Supp. 1340, 1367 (S.D.N.Y. 1984) ("Civil penalties should be large enough to hurt, and to deter anyone in the future from showing as little concern as [the defendant] did for the need to [comply].").  Indeed, "[e]ven if the defendant[ ] in this case [is] not in a position to repeat the violations, a substantial penalty is warranted to deter others." *LeCarreaux*, 1992 WL 108816 at *15.

▬▬▬ Courts routinely look to five factors for assessing CERCLA § 104(e) penalties: 1) the good or bad faith of the defendant; 2) the injury to the public; 3) the defendant's ability to pay; 4) the desire to eliminate the benefits derived by a violation; and 5) the necessity of vindicating the authority of the agency in question. *See generally, United States v. Reader's Digest Ass'n.*, 494 F.Supp. 770, 772 (D.Del. 1980), *aff'd*, 662 F.2d 955 (3d Cir.1981), *cert. denied*, 455 U.S. 908, 102 S.Ct. 1253, 71 L.Ed.2d 446 (1982).  Additionally, district courts assessing a civil penalty must provide a "reasoned analysis" for whatever sum is determined appropriate. *See United States v. Taylor*, 8 F.3d 1074, 1078 (6th Cir.1993).  The Court will address each of these five factors *seriatum* before deciding the appropriate penalty.

1. *Gurley Has Demonstrated Bad Faith in Failing to Respond Timely and Sufficiently to the Information Requests*

Gurley has demonstrated bad faith since the inception of the EPA's efforts to obtain information.  Gurley's efforts to evade responding to the February 6,1992 information request until U.S. Marshals became involved six months later borders on egregious.  This is particularly true because his reply took him a mere nineteen days to produce after he was forced to accept the information request.  Moreover, Gurley's failure for nearly seven years to answer questions concerning the nature and extent of the operations at the Site, knowledge of other PRPs, and financial information evince systematic, continual bad faith.  CERCLA authorizes the EPA to ask about precisely these matters, yet to the extent that Gurley answered these questions at all, his responses were terse and incomplete.  Even Gurley's attorney admitted, on the record, that Gurley's conduct "was wrong.... he got stubborn and he just wasn't going to do it until the Court told him to do it."  Tr. of Civil Penalty Trial at 37.  Thus, this Court concludes that Gurley acted in bad faith from the outset of the EPA's 1992 information request until Judge Turner ordered him to comply with that request. *Accord Martin*, 2000 WL 1029188 at *8; *Barkman*, 784 F.Supp. at 1190 (noting an "aura ... which suggests Barkman was deliberately uncooperative with the EPA"); *Taylor*, 1994 WL 695918 at *4 (finding bad faith because "there was no practical reason for denying" the EPA what it sought, along with the Defendant's "lack of willingness to cooperate with the environmental agencies"); *United States v. Crown Roll Leaf, Inc.*, 20 Envtl. L. Rep. 20297, 20300–01 (D.N.J. April 28, 1989) ("Crown Roll Leaf II") (finding bad faith due to the defendant's failure to respond "in a timely or complete manner," demonstrating "a failure by Crown's representatives to take the Information Request seriously or even focus on the Information Request in a timely manner.").

### 2. *Gurley's Actions Have Injured the Public*

The United States has articulated a variety of harms to the public due to Gurley's failure to comply properly with the information request. Gurley's failure to provide accurate and timely information clearly impeded the EPA's technical investigation of the Site contamination. As the United States argues, "[k]nowing potential areas of disposal and information relating to the chemical composition of wastes disposed at the Site would have made it possible to perform a more focused and specified site investigation." United States' Post–Trial Mem. at 21. Gurley correctly points out that the costs from this delay may be recovered through an effective cost recovery action against Gurley. Nevertheless, due to the limited amount of Superfund dollars, any money spent on the Site precluded the EPA from allocating that money, at least until a cost recovery action replenished the Superfund, to other Superfund locations. As a result, other toxic sites requiring infusions of Superfund money could not be remedied, thereby leaving the public exposed for longer than necessary to hazardous waste. *Accord Martin,* 2000 WL 1029188 at *9; *Barkman,* 784 F.Supp. at 1190; *Crown Roll Leaf II,* 20 Envtl. L. Rep. at 20301.

Gurley's failure to comply caused further harm to the public because lack of access to Gurley's useful information resulted in a cleanup effort that was less efficient and economical than it might have been had Gurley provided the EPA with the information it sought. Had Gurley timely complied, the EPA would have spent less than the $1,900,000 it spent on the Site, thereby leaving the difference to be used at other Superfund locations. Indeed, had Gurley provided the names of

the 417 PRPs in 1992, rather than late 1998, the EPA most probably would have been able to put together a large PRP group which could have financed the investigation and subsequent cleanup without requiring the EPA to dip into Superfund money. *See id.* at 20301, 1989 WL 201617. Additionally, Gurley's evasive tactics in refusing to accept the information requests caused the EPA to spend an inordinate amount of time trying to track him down, rather than performing remedial work at other Superfund sites. *See* id. at 22.

### 3. *Gurley Has the Ability to Pay a Substantial Civil Penalty*

The assessment of Gurley's ability to pay a civil penalty has been complicated by Gurley's bankruptcy proceedings over the past few years. Nevertheless, as of November 9, 2001, the record clearly indicates that Gurley's estate has nearly $23,000,000 available for distribution. *See* Letter from George E. Mills, Jr., Chapter 7 bankruptcy trustee, to Richard Gladstein, and attached Case Receipts and Disbursements Record, November 9, 2001. The only claimants against this estate are the United States (in its cost recovery suit), the bankruptcy trustee, and the counsel for the bankruptcy trustee. After subtracting $16,500,000 for the United States' response costs and $2,300,000 for the counsel for the bankruptcy trustee, $4,200,000 remain available to pay the bankruptcy trustee and any civil penalty against Gurley. Moreover, the $23,000,000 figure only includes Gurley's assets as of 1995; any additional assets acquired subsequent to 1995 would only bolster Gurley's ability to pay a substantial civil penalty. Assuming that the bankruptcy trustee fees do not total more than $2,292,000,[3]

---

**3.** This assumption appears to be fairly safe. Based upon the tiered system of trustee payment described in 11 U.S.C. § 326(a), the

trustee should be entitled to approximately $713,250, thereby leaving more than enough money for the payment of this civil penalty.

Gurley has the ability to pay the substantial penalty levied below. *Accord Genzale,* 807 F.Supp. at 939–40; *Crown Roll Leaf II,* 20 Envtl. L. Rep. at 20301.

4. *The Need to Eliminate the Benefits Derived by Gurley's Violation Suggests the Appropriateness of a Penalty*

Gurley has benefitted somewhat from his lack of candor in responding to the EPA's information requests. "The potential benefit to [the defendant] from failing to respond is measured ... in the savings of time and money needed to respond." *Martin,* 2000 WL 1029188, at *9 (citation omitted); *Crown Roll Leaf II,* 20 Envtl. L. Rep. at 20301. Gurley has saved both time and money initially by failing to respond and subsequently by providing only superficial, insufficient responses. Other courts have attributed benefits to defendants from "the potential savings to [the defendant] in evading liability by not providing information which may show it is liable for the costs of cleaning up the [contaminated] site." *Martin,* 2000 WL 1029188 at *9; *Crown Roll Leaf II,* 20 Envtl. L. Rep. at 20301. This Court finds the argument to be premature, however, because at present no court has found Gurley liable for the costs of cleaning up the Site. Moreover, even if liable, Gurley would ultimately not benefit because any gains from his delay could be offset by charging him interest for the period during which he was liable. *See Barkman,* 784 F.Supp. at 1190. As a result, this factor weighs in favor of the EPA, but not to the same degree as the other factors.

5. *The Necessity of Vindicating the Authority of the EPA Mandates the Imposition of a Stiff Penalty*

Courts have found it essential that the EPA's authority to solicit information be vindicated. "Without the ability to gather information and documents, the EPA would be handicapped in its ability to enforce CERCLA." *Martin,* 2000 WL 1029188 at *9 (quoting *United States v. Charles George Trucking, Co.,* 823 F.2d 685, 689 (1st Cir.1987)). *See also Crown Roll Leaf II,* 20 Envtl. L. Rep. at 20301 ("The most important factor in this case supporting the imposition of a significant civil penalty is the need to support the authority of EPA in matters such as this.... A significant penalty is necessary to underscore the seriousness of the information gathering authority of EPA and to ensure it is not ignored as it was by Crown in this case."). This Court concurs with *Martin* that "[a]ssessing a significant penalty against Martin will deter him and others from making light of the EPA's investigatory authority." *Id. See also Taylor,* 1994 WL 695918 at *4 ("[t]o allow an unreasonable denial to go unpunished entirely would encourage others to" not comply with agency requests, thereby impeding "the agency's ability to remedy problem sites"); *Genzale,* 807 F.Supp. at 939; *Barkman,* 784 F.Supp. at 1190 (arguing that the defendant's "deliberately inadequate cooperation supports the imposition of a substantial penalty" in order "to vindicate the authority of the EPA;") *Crown Roll Leaf II,* 20 Envtl. L. Rep. at 20301 ("Awarding a significant civil penalty in this case will not only deter Crown from future violations, but also deter others in the regulated community from treating EPA information requests as trivial matters ... or as nonsense.").

6. *Civil Penalty Calculation*

Based on the foregoing analysis, this Court hereby assesses penalties in the amount of $1,908,000. This total derives from Gurley's actions during three different periods. First, the Court fines Gurley $402,000 for the period from February 28, 1992 until September 15, 1992, the date Gurley finally responded ($2,000/day ×

201 days = $402,000). Second, the Court fines Gurley $682,000 for the period from September 16, 1992, until July 29, 1994, the date Gurley provided deposition testimony regarding other PRPs and Site operations ($1,000/day × 682 days = $682,000). Finally, the Court fines Gurley $824,000 for the period from July 30, 1994, until February 2, 1999, when Gurley answered the Section 104(e) request under Court order ($500/day × 1,648 days = $824,000). The Court bases this three-tiered penalty structure on the varying levels of egregiousness Gurley demonstrated in failing to comply fully with the EPA's information requests.

During the first period, Gurley acted in bad faith by attempting to evade receipt of the information requests. No justification has even been proffered by Gurley for his evasive tactics. Therefore, to punish Gurley for his reprehensible conduct and to deter other regulated entities from being inspired by Gurley's non-compliance with EPA information requests, a stringent fine should be assessed for this period. During the second period, Gurley at least minimally answered the information request, but his responses failed to address the key areas of concern for the EPA: Site operations, other PRPs, and Gurley's financial information. This Court has found all of Gurley's excuses to be unreasonable and in bad faith. Moreover, were such excuses to be permitted, the ability of the EPA to acquire information and fulfill its statutory duty to respond to environmental waste sites would be severely undermined. Finally, the third period continues to sanction Gurley for his failure to respond fully and truthfully to the EPA's information requests regarding Site operations, PRPs, and financial information, while allowing some dispensation due to the additional information on Site operations and PRPs provided by Gurley in his affidavit and deposition.

### III. *Conclusions*

For the above-stated reasons, Plaintiff's motion for the imposition of a civil penalty is GRANTED. A civil penalty in the amount of $1,908,000 is assessed against the defendant, William M. Gurley.