*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2004 FED App. 0320P (6th Cir.)
File Name: 04a0320p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  *v.*     No. 03-5132

WILLIAM M. GURLEY,
   *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 93-02755—Bernice B. Donald, District Judge.

Argued: August 4, 2004

Decided and Filed: September 21, 2004

Before: CLAY and GILMAN, Circuit Judges; MATIA,
Chief District Judge.*

———————————

## COUNSEL

**ARGUED:** Kent J. Rubens, RIEVES, RUBENS &
MAYTON, West Memphis, Arizona, for Appellant. Richard

———————————

Gladstein, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee. **ON BRIEF:** Kent J.
Rubens, RIEVES, RUBENS & MAYTON, West Memphis,
Arizona, James W. Gentry, Jr., SPEARS, MOORE,
REBMAN & WILLIAMS, Chattanooga, Tennessee, for
Appellant. Richard Gladstein, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee.

———————————

## OPINION

———————————

 RONALD LEE GILMAN, Circuit Judge. The
Environmental Protection Agency (EPA) issued an
information request to William M. Gurley on February 6,
1992 pursuant to § 104(e) of the Comprehensive
Environmental Response, Compensation, and Liability Act
(CERCLA), codified at 42 U.S.C. §§ 9604(e) and 9613(b).
Gurley was directed to respond to the request within 15 days.
He was warned that the failure to do so could result in an
enforcement action by the EPA and civil penalties of up to
$25,000 per day of noncompliance.

 The EPA filed a complaint on August 8, 1993, alleging that
Gurley had failed to adequately respond to the agency's
request. Gurley answered that he had previously disclosed
the requested information on January 4, 1989 in a deposition
taken by the EPA in a companion case. *See United States v.
Gurley Refining Co.*, 788 F.Supp. 1473 (E.D. Ark. 1992),
*aff'd in part and rev'd in part,* 43 F.3d 1188 (8th Cir. 1994).
Summary judgment was granted in favor of the United States
on December 30, 1998, and its petition for the imposition of
civil penalties was granted on November 26, 2002.

 Gurley appeals both the grant of summary judgment and
the consequent imposition of approximately $1.9 million in
civil penalties. He argues that (1) the information request was

invalid, (2) he is exempt from compliance with the agency's request, (3) the EPA's action is barred by the doctrine of res judicata, and (4) the agency's motivation remains a disputed issue of material fact. Gurley also challenges the imposition of the penalty against him on the grounds that (1) a portion of the fine was based upon a nonexistent cause of action, (2) the fine levied was in violation of the Excessive Fines and Due Process Clauses of the United States Constitution, and (3) the district court abused its discretion by imposing the penalty. Finally, Gurley argues that the statutory scheme that provides for the issuance of information requests violates the Due Process Clause of the Fifth Amendment to the United States Constitution. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The relevant facts are set forth in the district court's two opinions, the first of which granted the EPA's motion for summary judgment and the second of which granted the agency's petition to impose a civil penalty. In its summary judgment order, the court summarized the factual background as follows:

This case arises from EPA investigative actions surrounding a former landfill near South Eighth Street in West Memphis, Arkansas. As early as 1982, the EPA detected various hazardous chemicals at the site. Later investigations led the EPA on October 14, 1992, to place the site on the CERCLA National Priorities list. The United States is presently engaged in several cases surrounding the attempt to clean up that site.

From 1962 until the present, the plaintiff was the president and majority stockholder in Gurley Refining Company ("GRC"). GRC bought used oil and treated it, thereby allowing it to resell that oil. The refining process created a by-product residue of oily waste. GRC

disposed of this waste by dumping it at, among other locations, the South Eighth Street landfill.

On February 6, 1992, the EPA, pursuant to its authority under 42 U.S.C. § 9604(e)(2), issued a general notice letter and information request to the defendant. After several unsuccessful attempts to deliver that request, the United States Marshals Service served it on the defendant's wife. The information request sought Gurley's individual knowledge of, among other things, Gurley's assets, generators of material that [was] disposed of at the site, site operations, and the structure of GRC.

On September 15, 1992, the defendant sent a letter to the EPA stating his position that GRC was the entity that the EPA should contact for information related to the site. The EPA responded on January 7, 1993, by indicating that the February 6, 1992 information request was addressed to the defendant individually and must be answered in that capacity. The EPA also posed six additional questions to Gurley. On January 18, 1993, the defendant again sent a letter refusing to respond individually and suggesting that any information requests be directed to GRC.

The United States then filed [its] action. Gurley subsequently provided the EPA with an individual response; however, he refused to answer the questions regarding his financial condition and he ignored the six additional questions added to the EPA's original request for information. The United States also believes that Gurley's responses to the other questions were incomplete.

A significant delay in the proceedings was caused by Gurley's filing for personal bankruptcy in July of 1995. His bankruptcy petition was finally dismissed in August of 1997, allowing the district court to move forward on the EPA's

motion for summary judgment. The motion was granted on December 30, 1998, with the order providing that "the USA remains free to petition the court for the imposition of a civil penalty under 42 U.S.C. [§] 9604(e)(5)(B)." Such a petition was filed by the EPA in June of 1999. The petition was granted in November of 2002, with penalties imposed in the amount of $1,908,000 based upon the following calculation:

> First, the Court fines Gurley $402,000 for the period from February 28, 1992 until September 15, 1992, the date Gurley finally responded ($2,000/day x 201 days = $402,000). Second, the Court fines Gurley $682,000 for the period from September 16, 1992, until July 29, 1994, the date Gurley provided deposition testimony regarding other PRPs [Potentially Responsible Parties] and Site operations ($1,000/day x 682 days = $682,000). Finally, the Court fines Gurley $824,000 for the period from July 30, 1994, until February 2, 1999, when Gurley answered the Section 104(e) request under Court order ($500/day x 1,648 days = $824,000). The Court bases this three-tiered penalty structure on the varying levels of egregiousness Gurley demonstrated in failing to comply fully with the EPA's information requests.

This timely appeal followed.

## II. ANALYSIS

### A. Whether Gurley is liable for failing to respond to the EPA's information request

#### 1. *Standard of review*

The district court's grant of summary judgment is reviewed de novo. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the

district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In the present case, the parties had agreed in their joint pretrial order that no issues of material fact remained.

#### 2. *Statutory framework*

The EPA is authorized to issue information requests pursuant to § 104(e) of CERCLA, a provision that is codified at 42 U.S.C. § 9604(e)(2) and reads as follows:

**Access to information**

> Any officer, employee, or representative described in paragraph (1) may require any person who has or may have information relevant to any of the following to furnish, upon reasonable notice, information or documents relating to such matter:
>
> **(A)** The identification, nature, and quantity of materials which have been or are generated, treated, stored, or disposed of at a vessel or facility or transported to a vessel or facility.
>
> **(B)** The nature or extent of a release or threatened release of a hazardous substance or pollutant or contaminant at or from a vessel or facility.
>
> **(C)** Information relating to the ability of a person to pay for or to perform a cleanup.
>
> In addition, upon reasonable notice, such person either (i) shall grant any such officer, employee, or representative access at all reasonable times to any vessel, facility,

establishment, place, property, or location to inspect and copy all documents or records relating to such matters or (ii) shall copy and furnish to the officer, employee, or representative all such documents or records, at the option and expense of such person.

Liability for unreasonably failing to satisfy a properly issued request for information is set forth in 42 U.S.C. § 9604(e)(5)(B), which reads in pertinent part as follows:

In the case of information or document requests or orders, the court shall enjoin interference with such information or document requests or orders or direct compliance with the requests or orders to provide such information or documents unless under the circumstances of the case the demand for information or documents is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.

The court may assess a civil penalty not to exceed $25,000 for each day of noncompliance against any person who unreasonably fails to comply with th[is] provision[.]

### 3. *Whether the EPA's information request was valid*

The validity of an administrative request for information generally turns on the reasonableness of the request. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950) (quotation marks omitted) ("The gist of the protection is . . . that the disclosure sought shall not be unreasonable."). Although "a governmental investigation . . . may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power," *id.* at 652, "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Id.* An EPA information request, therefore, "will be enforced where: (1) the investigation is within EPA's authority; (2) the request

is not too indefinite; and (3) the information requested is relevant to legislative purposes." *United States v. Pretty Products, Inc.*, 780 F.Supp 1488, 1506 (S.D. Ohio 1991).

The district court below observed that the three elements from *Pretty Products* were satisfied in this case because: (1) "The EPA was authorized by Congress, pursuant to 42 U.S.C. § 9604(e)(2), to require any person with information relevant to the EPA's environmental investigation to furnish requested information or documents upon reasonable notice"; (2) "the scope of the request . . . was narrowly tailored to conform to the specific areas of inquiry within § 9604(e)(2)"; and (3) "the requests were consonant with the legislative purpose of CERCLA because the answers provided to the requests would facilitate the EPA's investigation and subsequent cleanup of the Site."

Gurley does not appear to dispute the first two elements. He argues, however, that because he gave his deposition testimony to the EPA on January 4, 1989, in which he allegedly provided all of the relevant information, the subsequent information request must not have been "truly for the purpose of determining a need for response or choosing a response action at the Site." Gurley thus contends that "the EPA sought information . . . (which it had already received from him) without having a statutorily justifiable purpose for making the information request."

But the government points out in its brief that "the 1989 deposition concerned the Gurley Pit, not the South 8th Street, litigation. At the deposition, counsel for Gurley objected to any questions specifically related to the South 8th Street Site." The government cites the following example from the deposition as illustrative of this point:

Q. [Counsel for the EPA]  Why did you stop placing waste in the City of West Memphis dump in the 1960s?

Mr. Rieves [counsel for Gurley]: I would object to that question, Craig. I don't see what relevance the City of West Memphis dump has to this lawsuit with regard to Gurley Pit at a separate location.

In addition, Gurley refused at his deposition to disclose personal financial data or to provide information about other PRPs.

Gurley also argues that even if the information request was valid at the time it was issued, he was no longer obligated to respond because the purposes that his disclosures would have served "had, for all intents and purposes, been accomplished prior to the time [when he] was required . . . to respond to the information request." But Gurley fails to cite any authority for the proposition that a party may escape liability for failure to respond to an information request by delaying until a response is no longer of use to the agency. Furthermore, the need for a response and the usefulness of the information, which was requested on February 6, 1992, continued until at least November of 1998, a time before which the cleanup at the site in question had not yet begun. The information sought by the EPA in the request was also relevant to the agency's ability to recover its incurred response costs, a valid purpose that would continue even after the completion of cleanup.

### 4.    *Whether Gurley was exempt from compliance*

Gurley argues that he is simply a service station dealer under 42 U.S.C. § 9601(37)(A)(ii) (defining a "service station dealer") and, as such, is exempt from compliance with the information request by virtue of 42 U.S.C. § 9614(c) (exempting service station dealers from certain abatement actions brought under 42 U.S.C. §§ 9606 and 9607). But the service-station-dealer exception pertains to liability only under §§ 9606 and 9607. *See* 42 U.S.C. § 9614(c) ("No person . . . may recover, under the authority of subsection (a)(3) or (a)(4) of section 9607 of this title, from a service

station dealer for any response costs or damages resulting from a release or threatened release of recycled oil, or use the authority of section 9606 of this title against a service station dealer . . . ."). Gurley cites no authority for the proposition that, despite its limited scope, § 9614(c) also operates to exempt service station dealers from compliance with information requests. Nor does Gurley's argument find support in the text of § 9604(e)(2), which states that the EPA may issue an information request to "*any person* who has or may have information . . . ." (emphasis added).

The government's alternative contention is that Gurley is not a service station dealer as defined in § 9601(37)(A)(ii) because, among other reasons, he allegedly did not comply with the Solid Waste Disposal Act. Because the obligation to respond to an EPA information request is not affected by one's status as service station dealer, however, the question of whether Gurley would so qualify under § 9601(37)(A)(ii) is irrelevant and therefore need not be decided.

### 5.    *Whether the district court erred in upholding the EPA's request for information*

Gurley contends that the EPA abused its discretion and acted in an arbitrary and capricious manner by requesting information from Gurley that he had already provided in his 1989 deposition. Because the 1989 deposition testimony concerned only the Gurley Pit, however, it did not exhaust inquiry relevant to the cleanup and cost recovery relating to the South Eighth Street Site. The EPA's subsequent issuance of an information request relating to the latter site was therefore not "a burdensome repetition" as Gurley protests.

### 6.    *Whether the EPA issued its information request with an improper motive or intent*

Gurley alleges that the district court failed to comprehend that it was "granting a summary judgment on a matter that relied upon, among other matters, motivation and intent."

The government responds by pointing out that Gurley raises this argument for the first time on appeal. Indeed, the parties had previously agreed in their joint pretrial order that no issues of material fact remain. We will hold Gurley to his pretrial stipulation. *See United States v. Ninety-Three (93) Firearms*, 330 F.3d 414, 424 (6th Cir. 2003) ("This court has repeatedly held that it will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.") (quotation marks omitted). We perceive no such miscarriage of justice to exist with regard to the EPA's information request.

### 7. *Whether the doctrine of res judicata bars the EPA's claim*

Gurley argues that a criminal action brought under the 1970 Rivers and Harbors Act against GRC for allegedly dumping waste in the Mississippi River bars the EPA from bringing the current CERCLA § 104(e) action against him. The district court concluded that Gurley's res judicata argument was without merit, reasoning as following:

> Gurley's original response to summary judgment also argued that the United States' CERCLA claim was barred by res judicata. . . . An almost identical contention was subsequently rejected by the Eighth Circuit in *United States v. Gurley*, 43 F.3d 1188 (8th Cir. 1994). That case involved a separate CERCLA superfund site, but as in this case, GRC had been previously prosecuted under the Clean Water Act. The Eighth Circuit held that because Gurley had not been a named party in the previous suit, he could be sued in his individual capacity in a subsequent action. This court adopts the Eighth Circuit's reasoning. Regardless of this finding, it appears from his supplemental response to summary judgment that Gurley has abandoned his res judicata argument.

Gurley alleges that the district court committed reversible error when it "improperly assumed that the Eighth Circuit decision was law of the case as to Gurley and he could not rely upon the doctrine of res judicata." We find no suggestion in the district court's order, however, that it rejected the res judicata argument on the ground that the Eighth Circuit's decision precluded the court below from considering the argument. Rather, the district court rejected the argument based upon the same reasoning as the Eighth Circuit had articulated. The district court further concluded that the res judicata argument had been abandoned by Gurley in his supplemental response to the motion for summary judgment. We find no error in the district court's analysis of this issue.

### B. Whether the district court erred by imposing civil penalties on Gurley

#### 1. *Standard of review*

We will uphold the district court's imposition of a civil penalty unless it has abused its discretion. *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994) ("Because the statute [ERISA] expressly grants a district court discretion in imposing penalties for an employer's failure to disclose, we review only for abuse of discretion."); *see also Tull v. United States*, 481 U.S. 412, 425 (1987) (referring to the district court's imposition of civil penalties for violation of the Clean Water Act as "highly discretionary").

An abuse of discretion will be found where the reviewing court is "firmly convinced that a mistake has been made." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quotation marks omitted) (defining the term "abuse of discretion" to mean that "the lower court relie[d] on clearly erroneous findings of fact, . . . improperly applie[d] the law[,] or use[d] an erroneous legal standard." *Id.* (quotation marks omitted). Legal conclusions regarding the violation of constitutional rights are reviewed de novo. *See*

*United States v. Bajakajian*, 524 U.S. 321, 337 n.10 (1998) ("[T]he question whether a fine is constitutionally excessive calls for the application of a constitutional standard to the facts of a particular case, and in this context *de novo* review of that question is appropriate.").

### 2.   Statutory framework

"The court may assess a civil penalty not to exceed $25,000 for each day of noncompliance against any person who unreasonably fails to comply with th[is] provision[.]" 42 U.S.C. § 9604(e)(5)(B); *see also United States v. Ponderosa Fibres of America, Inc.*, 178 F. Supp.2d 157, 161 (N.D.N.Y. 2001) ("[W]hether the assessment of civil penalties for non-compliance is appropriate turns on the question of the reasonableness of the failure to comply with an Information Request.").

### 3.   Whether the district court imposed a fine based upon a nonexistent cause of action

Gurley contends that because the complaint sought penalties only for the period of time from September 11, 1992 forward, the district court erred by imposing a fine in the amount of $402,000 for the period of time from February 28, 1992 through September 15, 1992. The government responds that Gurley consented to the consideration of these dates by failing to object at trial to the introduction of evidence regarding his bad faith avoidance of the EPA's letters during the time in question. (The history of the EPA's repeated attempts to get Gurley to acknowledge receipt of the information request is detailed in the district court's opinion.)

In support of its "implied consent" theory, the government cites *Craft v. United States*, 233 F.3d 358, 371-73 (6th Cir. 2000), *rev'd on other grounds by* 535 U.S. 274 (2002). The *Craft* decision held, among other things, that the IRS could pursue a theory that it had not pled because the issue was tried with the implied consent of the parties and no prejudice to the

defendant was shown. *Id.* at 371-72. In addition, although the government's complaint originally sought penalties only for the period of time after September 11, 1992, its June 15, 1999 petition for civil penalties discusses Gurley's avoidance scheme as beginning in February of 1992. In light of the government's petition that put Gurley on notice that it was going to present evidence of his avoidance that began in February of 1992, and Gurley's failure to object to the admission of such evidence, we conclude that the district court properly exercised its discretion by fining Gurley for his noncompliance during this earlier period of time.

### 4.   Whether the district court's imposition of civil penalties violated the Excessive Fines and Due Process Clauses of the United States Constitution

With a statutory maximum of $25,000 per day in potential civil penalties, an imposition of tens of millions of dollars could have been assessed in this case, but only a fraction of that amount was ultimately levied: $1,908,000. Gurley nevertheless argues that the penalty imposed on him is unconstitutionally excessive, citing *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) ("[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."). In light of Gurley's wilful noncompliance for a period of seven years, however, we are not persuaded that the fine is "grossly disproportional to the gravity of [the] defendant's offense." *Id.* at 334.

Gurley's assertion of a due process violation is likewise without merit because a rational basis exists for penalizing those who, like Gurley, purposefully ignore the EPA's information requests over long periods of time. Penalties such as those imposed here will encourage other PRPs to share information that might be helpful in the cleanup of Superfund sites.

### 5.   *Whether the district court abused its discretion by ordering Gurley to pay a $1,908,000 civil penalty*

Gurley acknowledges that the "trial judge's analysis of the factors to be considered in assessing the civil penalty was correct." He nevertheless argues that the district court abused its discretion by imposing the penalty. We disagree. The district court properly addressed each of the factors that district courts routinely consider before arriving at its penalty. *See United States v. Taylor*, 8 F.3d 1074, 1078 (6th Cir. 1993) ("[C]ourts have identified the following factors, among others, as bearing on the amount of a penalty: (1) the good or bad faith of the defendant, (2) the injury to the public, (3) the defendant's ability to pay, (4) the desire to eliminate the benefits derived by a violation, and (5) the necessity of vindicating the authority of the enforcing party.") (quotation marks omitted)*; United States v. Barkman*, 784 F. Supp. 1181, 1189 (E.D. Pa. 1992) (holding that the same five factors should be considered in assessing civil penalties against an operator of a landfill for failure to comply with information requests issued to him pursuant to CERCLA). Most of the factors' application to Gurley are self-evident. As for Gurley's ability to pay the civil penalty, the district court found as follows:

> The assessment of Gurley's ability to pay a civil penalty has been complicated by Gurley's bankruptcy proceedings over the past few years. Nevertheless, as of November 9, 2001, the record  clearly indicates that Gurley's estate has nearly $23,000,000 available for distribution. . . . After subtracting $16,500,000 for the United States' response costs and $2,300,000 for the counsel for the bankruptcy trustee, $4,200,000 remain available to pay the bankruptcy trustee and any civil penalty against Gurley. . . . Gurley has the ability to pay the substantial penalty levied[.]

In sum, we find no abuse of discretion in the district court's analysis and therefore uphold the civil penalty as imposed.

### C.   **Whether CERCLA § 104(e) violates the Due Process Clause of the Fifth Amendment to the United States Constitution**

Gurley "invite[s] this Court to visit the question of whether the applicable portion of 104(e) (information requests), particularly as it was interpreted and enforced by the district court, violates the Due Process Clause of the Fifth Amendment" in light of the Eleventh Circuit's decision in *Tennessee Valley Authority v. Whitman*, 336 F.3d 1236 (11th Cir. 2003) (holding that the penalty provisions of the Clean Air Act are unconstitutional because they can be assessed as part of an administrative compliance order). That decision, however, is easily distinguishable. The *Tennessee Valley Authority* case concerned the issuance of an administrative compliance order imposing a penalty based upon the agency's own determination that the Clean Air Act had been violated. *Id.* at 1258. In the present case, by contrast, Gurley was afforded all of the process that he was due because a judicial determination that CERCLA had been violated followed a full and fair hearing before a federal judge. *Id.* ("Before the Government can impose severe civil and criminal penalties, the defendant is entitled to a full and fair hearing before an impartial tribunal at a meaningful time and in a meaningful manner.") (quotation marks omitted).

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.