The UNITED STATES of
America, Plaintiff,

v.

718 WEST WILSON AVENUE, GLEN-DALE, CALIFORNIA, 91203, LOT 17 OF TRACT NO. 4531, in the county of Los Angeles, California, as per map recored at Book 52, page 18 of Parcel Maps, Office of the County Recorder, and Hovsep Boghossian, Defendants.

Case No. 2:09–cv–06487–JHN–VBKx.

United States District Court,
C.D. California.

April 11, 2011.

Davis H. Forsythe, William A. Weinischke, United States Department of Justice, Washington, DC, for Plaintiff.

Jilbert Tahmazian, Jilbert Tahmazian Law Offices, Glendale, CA, for Defendants.

**ORDER GRANTING THE UNITED STATES' *SECOND* MOTION FOR PARTIAL SUMMARY JUDGMENT [91]**

JACQUELINE H. NGUYEN, District Judge.

Before the Court is Plaintiff United States of America's ("United States") Motion for Partial Summary Adjudication of two narrow issues: (1) the amount it may recover under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and (2) the deficiency of Defendant Hovsep Boghossian's ("Boghossian") response to CERCLA section 104(e) Information Request. (Docket No. 91.) The Court has considered the Motion, Opposition, and Reply briefs, and oral arguments at the hearing on March 28, 2010. For the reasons discussed below, the motion is GRANTED.

## I. FACTUAL BACKGROUND

The underlying *in rem* action stems from the United States' removal of hazardous substances from a property. The following facts are not in dispute. (*See* Order re United States' Mot. for Partial Summ. J. at 2–3, dated 11/30/10 (hereinafter, "11/30/10 Order"); Docket No. 70.) The defendants in the underlying Complaint filed by the United States are (1) the subject property ("Property"), 718 West Wilson Avenue, Glendale, California, 91203, and (2) Boghossian, the Property's current owner. (Docket No. 1.) The Property is located within the San Fernando Valley Area 2 Superfund Site. In the past, the Drilube Company operated on the Property, using numerous chemicals in an aerospace-related operation. Soil on the Property and groundwater beneath the Property are now contaminated with chemicals.

The U.S. Environmental Protection Agency ("EPA") began conducting response activities at the Property in March 2007, and in April 2010 EPA completed a removal action involving contaminated soil. EPA also will likely conduct future removal or treatment actions on the Property. EPA's response costs as of May 31, 2010, are largely unreimbursed.

In 2004, Remy Mazmanian purchased the property. During the time Remy Mazmanian owned the Property, EPA obtained a lien on the Property pursuant to CERCLA section 107(*l*), 42 U.S.C. § 9607(*l*), recording notice of the lien in the Los Angeles County Recorder's Office on March 7, 2008. Despite the existence of the EPA lien, Boghossian purchased the Property on June 25, 2008. (11/30/10 Order at 7.)

## II. PROCEDURAL HISTORY

On September 3, 2009, the United States commenced the underlying action to seek reimbursement for the costs the EPA incurred in connection with the cleanup. (Docket No. 1.) On January 28, 2010, the Court granted a motion to intervene brought by United States Bank, National Association ("U.S. Bank"), allowing U.S. Bank to intervene as Plaintiff–in–Intervention against Defendants–in–Intervention Boghossian (*also known as* Hovsep Derboghossian), Remy Mazmanian, Nations Title Company of California, Regency Estate Properties, Inc., and Transunion Title Insurance Company. (Docket No. 12, 14.)

Thereafter, the Court granted the United States' Motion to Trifurcate, trifurcating the case into separate phases for (1) the determination of liability, (2) the determination of costs to be paid by liable parties, and (3) the determination of remaining issues brought by U.S. Bank. (Docket No. 52.)

On November 30, 2010, the Court granted in part and denied in part the United States' Motion for Partial Summary Judgment. (Docket No. 70.) The Court held the Property liable *in rem* pursuant to CERCLA section 107(*l*), 42 U.S.C. § 9607(*l*), for response costs not inconsistent with the National Contingency Plan ("NCP").[1] (11/30/10 Order at 5.) Further, the Court found "Boghossian liable as an 'owner and operator' of the Property" pursuant to CERCLA 107(a), 42 U.S.C. § 9607(a), for response costs not inconsistent with the NCP, both costs already incurred and future costs. (*Id.* at 7–8.)

The United States is now before the Court on its second motion for partial summary judgment. (Docket No. 91.) This time, the United States seeks summary adjudication of the amount it is entitled to recover relating to costs it incurred in connection with the Property. In particular, the United States seeks to recover response costs of at least $1,392,734.14 as of September 30, 2010.[2] (Mot. at 1.) Furthermore, it also seeks summary adjudication as to the tardiness and insufficiency of Boghossian's response to the EPA's request for information under section 104(e) of CERCLA, 42 U.S.C. 9604(e) ("Information Request").

Defendants' opposition briefs were due on February 14, 2011. (Reply at 2; Docket No. 123.) Defendant Boghossian filed an opposition on February 18, 2011 without offering any excuse for his belated response.[3] Defendant Property failed to file any response at all. Pursuant to Local Rule 7–12, the Court need not consider Boghossian's opposition. However, even if the Court were to consider it, as it did, the

---

1. The NCP is described at 42 U.S.C. § 9605 and is set forth at 40 C.F.R. Part 300, *et seq.* That plan sets forth "procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants. . . ." 42 U.S.C. § 9605(a).

2. The United States is only seeking costs associated with the Property, rather than all costs associated with the San Fernando Valley Area 2 Superfund Site, as requested in the Complaint. (Mot. at 1 n. 1.)

3. The Court notes that this is the second time Boghossian has filed a late opposition. (*See* 11/30/10 Order at 3.)

Court finds that the United States is entitled to summary adjudication of the two issues as a matter of law.

## III. LEGAL STANDARD

■ Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987); *see also Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) ("Material facts are those which may affect the outcome of the case.") (internal citations omitted).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630–31; *see also Brookside Ass'cs v. Rifkin*, 49 F.3d 490, 492–93 (9th Cir.1995). The evidence presented by the parties must be admissible. Fed.R.Civ.P. 56(c)(2).

## IV. DISCUSSION

### A. The United States Is Entitled to Recover its Response Costs from Defendants.

■ The costs incurred by the United States and documented in the EPA Cost Summary and the Declaration of William Kime are the types of costs recoverable under CERCLA. Section 9607(a) of CERCLA makes responsible parties liable for "*all* costs of removal or remedial action incurred by the United States Government. . . ." 42 U.S.C. § 9607(a)(4) (emphasis added.) "Essentially, Congress has authorized the government to utilize Superfund money to take direct response actions that are consistent with the NCP and to recover all response costs from all persons responsible for the release of a hazardous substance. 42 U.S.C. § 9607(a). The recovered funds are used to replenish the Superfund." *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1500 (6th Cir.1989). The broad remedial purpose of CERCLA supports a liberal interpretation of the term "all costs." *See United States v. Chapman*, 146 F.3d 1166, 1175 (9th Cir.1998) ("CERCLA is remedial legislation that should be construed liberally to carry out its purpose"); *Meyer*, 889 F.2d at 1503 (finding that the broad remedial purpose of CERCLA supports a liberal interpretation of recoverable costs).

Courts have found that recoverable response costs include:

(1) *direct costs* such as those incurred assessing, investigating, monitoring, testing and evaluating contamination at a site, as well as costs of designing and implementing a response action (*see* 42 U.S.C. § 9601(23); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 (2d Cir.1985) (finding that the state's costs in assessing the conditions of the site and supervising the removal of the drums of hazardous waste squarely fall within CERCLA's definition of response costs); *Meyer*, 889 F.2d at 1502–04);

(2) *indirect costs* such as overhead costs in administering the program and litigating Superfund enforcement actions (*see Meyer*, 889 F.2d at 1503; *United States v. Ottati & Goss*, 900 F.2d 429, 444

(1st Cir.1990) (stating that "ordinarily courts should allow recovery of [ ] indirect costs"); *California v. Neville Chem. Co.,* 213 F.Supp.2d 1115, 1124 (C.D.Cal.2002) (stating that recoverable response costs also include indirect costs or overhead));

(3) *litigation costs,* including reasonable fees, administrative costs and investigative costs related to the response action (*see* 42 U.S.C. § 9601(25); *Chapman,* 146 F.3d at 1175 (concluding that the government, as the prevailing party, may recover attorney fees attributable to the litigation as part of its response costs); *United States v. Gurley,* 43 F.3d 1188, 1199–1200 (8th Cir.1994) (DOJ attorneys fees and litigation expenses recoverable));

(4) *interest on the recoverable costs incurred* (*see* 42 U.S.C. § 9607(a)(4), *Meyer,* 889 F.2d at 1505).

■ The costs the United States seeks to recover fall within the categories of recoverable costs described above. In particular, the costs at issue fit within the following categories: (1) EPA payroll expenses and travel expenses incurred in conducting response actions in connection with the Property and in seeking to recover from the Defendants; (2) EPA contractor expenses for work conducted in connection with the Property; (3) EPA indirect/oversight costs; and (4) DOJ enforcement costs. Boghossian's opposition does not dispute that the United States is entitled to recover these costs as a matter of law. Indeed, Boghossian's brief completely failed to address this issue. Accordingly, the Court concludes that there is no dispute that as a matter of law, the costs incurred by the United States are of the type recoverable under CERCLA.

The United States seeks to recover its response costs in connection with this Property in the sum of $1,392,734.14. (Fong Decl. ¶ 47.) These costs are summarized in the Kime Declaration, Pennington Declaration, and Exhibit I to the Fong Declaration. Ms. Fong and Mr. Pennington of the EPA submit that they personally reviewed the underlying cost records and documentation, and reconciled the EPA Cost Summary against those documents to confirm its accuracy. (*See* Fong Decl. & Pennington Decl., *generally.*) Courts have held that affidavits and cost summaries submitted by the United States in support of its motions for summary judgment on the issue of cost recovery under CERCLA are admissible and sufficient to establish the amount of these costs. *See e.g., United States v. Hardage,* 982 F.2d 1436, 1442–1443 (10th Cir.1992) (finding affidavits of various EPA and DOJ employees charged with accumulating the cost data and cost summaries established a prima facie case that the government is entitled to the claimed response costs); *United States v. Chromalloy Am. Corp.,* 158 F.3d 345, 352 (5th Cir.1998) (observing that courts have found detailed cost summaries sufficient to establish a prima facie case that the government is entitled to its response costs); *United States v. Findett Corp.,* 220 F.3d 842, 849 (8th Cir.2000) (admitting detailed cost summaries, supporting data, and other competent evidence to support its claim for recovery of response costs). Based on the declarations and costs summaries submitted by the United States, the Court finds that government is entitled to recover the claimed amount.

Boghossian does not dispute that all costs set forth in the EPA Cost Summary are supported by documentation maintained by the EPA. (Boghossian's Resp. to Pl.'s Statement of Genuine Issues ("SUF"), ¶ 5.) However, Boghossian argues that Plaintiff has not presented evidence that the costs are directly attributable to him or his activities. (*Id.* ¶¶ 7–10, 12–14.) Boghossian's argument does not create a genuine dispute with regard to this issue. Boghossian, in essence, at-

tempts to re-litigate his CERCLA liability. In his opposition, Boghossian, for the second time, contends that others caused and contributed to the contamination and they are the ones responsible in whole or in part for the damages. (Opp'n at 4–5.) That is not the issue in the current motion, and in fact, the Court has already ruled on this particular issue in a previous order. (*See* 11/30/10 Order at 6–7.) The Court found Boghossian liable as an owner, because he was aware of the contamination at the time of his purchase, and he had constructive notice of contamination because the United States recorded a lien on the property. (*Id.* at 7.) To re-visit the issue of Boghossian's CERCLA liability again at this juncture is not only improper, but does nothing to create a triable issue that will preclude summary adjudication of the total cost the United States is entitled to recover as a matter of law.

■ Once the government has established its prima facie case under CERCLA § 107(a), the burden shifts to the defendants to create a genuine issue of material fact on the question whether the EPA's response action was inconsistent with the NCP. *Chapman*, 146 F.3d at 1170. In the instant case, Boghossian failed to do so and his papers did not even address this issue. Based on the foregoing, the Court concludes that there is no triable issue that the EPA has incurred unreimbursed costs of $1,392,734.14 in connection with its response costs relating to the Property and the United States is entitled to recover this amount. In addition, the Court finds that Defendants are jointly and severally liable. "Once liability is established, the defendant may avoid joint and several liability by establishing that it caused only a divisible portion of the harm." *Carson*

*Harbor Vil., Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir.2001). Defendants make no such showing here, and they are thus jointly and severally liable for the entire amount of costs incurred in connection with the Property.[4]

**B. Boghossian's Response to EPA Information Request Was Late and Otherwise Inadequate as a Matter of Law.**

■ The United States moves for an order summarily adjudicating the timeliness and sufficiency of Boghossian's response to the United States' CERCLA section 104(e) Information Request. Moreover, in view of Boghossian's alleged late and deficient response, the United States asks for penalties to be assessed against him in the amount of $37,500. (Mot. at 16.)

The following facts are not in dispute. (*See* Boghossian's Resp. to Pl.'s SUF, ¶ 15–19.) On November 18, 2008, Boghossian received the Information Request, notifying him of his potential CERCLA liability, requesting information from him, and requiring him to respond **within forty-five (45) days of receipt of the letter.** (Taylor Decl. ¶ 6.) The Information Request noted that compliance with the its terms was mandatory and failure to comply might result in enforcement action and imposition of civil penalties. (*Id.*)

Thereafter, on February 26, 2009, the EPA sent him a letter ("the Failure to Comply Letter"), informing him that his response to the Information Request was overdue and reminding him that his exposure to liability for civil penalties would grow with each day of continued noncompliance. (*Id.* ¶ 7.) Boghossian received the

---

4. In the prior Motion for Summary Adjudication, the United States sought recovery for the *entire* site, not just the Property at issue. Therefore, the Court reserved ruling on the issue of apportionment. (11/30/10 Order 7–8.) The instant Motion limits recovery to only the Property at issue.

Failure to Comply Letter on March 23, 2009. (*Id.*)

On April 9, 2009, ninety-four (94) days after the response period provided by EPA had elapsed, Boghossian provided the EPA with a response. (*Id.* ¶ 8.) His 104(e) Response consisted of a single page of answers, and was not accompanied by documents or other evidentiary submissions. (*Id.* ¶¶ 8–9.) Boghossian did not supplement his 104(e) Response with additional submissions of answers or documents. (*Id.* ¶ 9.) The United States offered Defendants access to the underlying documents supporting its response activities and costs incurred in connection with the Property. (Weinischke Decl. ¶¶ 6–7.) Defendants never sought to make any arrangement to review or inspect these documents relating to the EPA's response costs. (*Id.* ¶ 7.)

Unreasonable failure to comply with an EPA information request warrants judicial imposition of a civil penalty not to exceed $32,500 per day for violations between March 15, 2004 and January 12, 2009, and $37,500 per day for violations occurring after January 12, 2009. 42 U.S.C. § 9604(e)(5)(B); 73 Fed. Reg. 75340, 75345 (December 11, 2008) (regulations adjusting statutory penalties for inflation).

■ In assessing penalties for unreasonable failure to comply with an information request, "[c]ourts have identified the following factors as bearing on the amount of a penalty: (1) the good or bad faith of the defendant, (2) the injury to the public, (3) the defendant's ability to pay, (4) the desire to eliminate the benefits derived by a violation, and (5) the necessity of vindicating the authority of the enforcing party." *United States v. Gurley*, 384 F.3d 316, 325 (6th Cir.2004) (quoting *United States v. Taylor*, 8 F.3d 1074, 1078 (6th Cir.1993)). In view of these factors, the United States seeks a penalty of $37,500, which is equivalent to the maximum penalty for a single day of violation, but suffi-

cient to send the message that potentially responsible parties must take EPA's information requests seriously. (Mot. at 16.)

As previously stated, Boghossian does not dispute the underlying facts supporting the request for penalty. (*See* Boghossian's Resp. to Pl.'s SUF, ¶ 15–19.) Nor does he dispute the amount of penalty. (*See* Opp'n, *generally.*) In fact, he completely failed to address the request for penalty. Based on the foregoing, the Court finds that Boghossian's response was late, was insufficient, and failed to comply with the Information Request. There is also not dispute that a penalty of $37,500 is sufficient to serve the purposes of the CERCLA penalty provision.

## V. CONCLUSION

For these reasons, summary adjudication of the two issues are GRANTED. The United States is ordered to prepare and submit a proposed Judgment.

**IT IS SO ORDERED.**